IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THOMAS H.,[1]

        Plaintiff,

        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Case No. 6:25-cv-01269-SB

**OPINION AND ORDER**

---

**BECKERMAN, U.S. Magistrate Judge.**

Thomas H. ("Plaintiff") filed this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the Court affirms the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

///

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court's review is limited because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

PAGE 2 – OPINION AND ORDER

**BACKGROUND**

## I.    PLAINTIFF'S APPLICATIONS

Plaintiff was born in July 1983, making him thirty-seven years old on November 13, 2020, his alleged disability onset date. (Tr. 65, 112, 296.) Plaintiff is a high school graduate who has past relevant work experience as a housekeeping cleaner. (*Id.* at 31, 46, 59-61, 297.) In his applications, Plaintiff alleges disability due to depression, anxiety, obesity, left shoulder bursitis, bone spurs in his heels, planter fasciitis, high blood pressure, arthritis in his knees and upper back, and chronic pain and a herniated disc in his back, which makes his toes numb. (*Id.* at 66, 112.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and on March 22, 2024, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 19.) On October 4, 2024, Plaintiff and an impartial vocational expert ("VE") appeared and testified at a telephonic hearing held before an ALJ. (*Id.* at 43-64.) On October 25, 2024, the ALJ issued a written decision denying Plaintiff's applications. (*Id.* at 19-34.) On July 10, 2025, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011) (citations

PAGE 3 – OPINION AND ORDER

omitted). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

To establish a "prima facie case of a disability," a claimant must demonstrate "at steps one through four of the sequential evaluation process that she suffers from a severe impairment that prevents her from doing any work she has done in the past, or that she has a severe impairment and has no relevant past work[.]" *White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). If the claimant does so, "[t]he burden then shifts to the Commissioner at step five to establish that the claimant can perform a 'significant number[]' of jobs in the national economy given the claimant's physical and mental limitations, age, education, and work experience." *Id.* (first quoting 20 C.F.R. § 416.960(c)(2); and then citing *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). "If the Commissioner meets [his] burden, the claimant has failed to establish disability." *Thomas*, 278 F.3d at 955 (simplified).

III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 19-34.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 13, 2020, his alleged disability onset date. (*Id.* at 21.) At step two, the ALJ determined that Plaintiff suffered from severe impairments: "[L]umbar degenerative disc disease; obesity; left shoulder bursitis; left knee internal derangement; right metatarsophalangeal degenerative joint disease, calcaneal plantar spur, and great toe gout; depressive disorder; and anxiety disorder[.]" (*Id.* at 22.) At step three, the ALJ found that

PAGE 4 – OPINION AND ORDER

Plaintiff does not suffer from an impairment that meets or medically equals a listed impairment. (*Id.* at 23.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform "light work," subject to the following limitations: (1) Plaintiff can lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently, (2) Plaintiff can sit, stand, and walk about six hours in an eight-hour workday, (3) Plaintiff can occasionally stoop, crouch, kneel, reach overhead with his left upper extremity, and climb ramps and stairs, (4) Plaintiff can never crawl, balance (i.e., as "defined by the Selective Characteristics of Occupations of the Dictionary of Occupational Titles"), or climb ladders, ropes, and scaffolds, (5) Plaintiff can perform low stress work (i.e., no more than occasional changes in work setting and duties) that requires only an ability to understand, remember, and carry out simply tasks and instructions, and (6) Plaintiff cannot perform work that involves a moving conveyor belt, hourly quotas, moving mechanical parts, or unprotected heights. (*Id.* at 25.) At step four, the ALJ concluded that Plaintiff can perform his past work as a housekeeping cleaner. (*Id.* at 31-32.) At step five, the ALJ alternatively found that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, such as a marker, cashier II, and routing clerk. (*Id.* at 32-33.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by (1) failing to provide clear and convincing reasons for discounting his symptom testimony, (2) failing adequately to account for his morbid obesity in formulating his RFC, and (3) failing to provide a sufficient explanation for discounting the opinion of the consultative examiner, Linda Luther-Starbird, Ph.D. ("Dr. Luther-Starbird"). (Pl.'s Opening Br. at 2, ECF No. 11; Def.'s Br. at 2, ECF No. 13; Pl.'s Reply Br. at 1, 4-5, ECF No. 14.) As explained below, the Court finds that the ALJ's decision is free of harmful

PAGE 5 – OPINION AND ORDER

legal error and supported by substantial evidence and therefore affirms the Commissioner's decision.

## I.     PLAINTIFF'S SYMPTOM TESTIMONY

### A.     Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (simplified).

### B.     Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 26, reflecting that the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms"). As a result, the ALJ was required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The ALJ met that standard here.

///

///

PAGE 6 – OPINION AND ORDER

### 1.    Preliminary Considerations

"[T]he 'clear and convincing' standard requires an ALJ to show his work[.]" *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (quoting *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021)). That "assure[s a] reviewing court that [the ALJ] did not arbitrarily discredit [the claimant's] testimony." *Cope v. Bisignano*, No. 25-2337, 2026 WL 1134289, at *1 (9th Cir. Apr. 27, 2026) (simplified). Satisfying this standard turns on "whether the ALJ's rationale is clear enough that it has the power to convince," not on "whether [the] court is convinced[.]" *Smartt*, 53 F.4th at 499.

In evaluating the sufficiency of the ALJ's rationale, a court may not "'second-guess' an ALJ's reasonable interpretation of a claimant's testimony." *Id.* at 500 (first quoting *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); and then citing *Thomas*, 278 F.3d at 959); *see also Treichler*, 775 F.3d at 1098 ("[Courts] leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.") (simplified). A court must instead ask whether the ALJ's rationale for discounting the claimant's testimony is supported by "substantial evidence in the record as a whole"; that is, "more than a mere scintilla" of evidence, which is "not [a] high" evidentiary threshold and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)); *cf. Chen v. Bisignano*, No. 25-3588, 2026 WL 1427028, at *1-2 (9th Cir. May 21, 2026) ("Substantial evidence requires 'more than a mere scintilla' of evidence but does not require more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' when considering the entire record. . . . The ample record evidence relied on by the ALJ is 'more than a mere scintilla' of evidence to support his decision to discount [the claimant's] subjective symptom testimony." (quoting *Biestek*, 587 U.S. at 103)).

PAGE 7 – OPINION AND ORDER

Applying these principles below, the Court finds that substantial evidence supports the ALJ's discounting of Plaintiff's testimony. Before turning to the clear and convincing reasons that the ALJ provided, it is important to consider that the ALJ "did not fully discount" Plaintiff's testimony and formulated an RFC that accounted for Plaintiff's physical and mental limitations. *Cf. Morrow v. Bisignano*, No. 24-3711, 2025 WL 1924900, at *2 (9th Cir. July 14, 2025) ("Notably, the ALJ recognized that [the claimant] does have limitations in his ability to stand, walk, and sit, which the ALJ incorporated into his [RFC] . . . finding that [he] can sit for six hours a day and stand and walk for three hours a day. But the ALJ ultimately determined that [his] allegations of even greater limitations were inconsistent with the foregoing examination findings in [his] medical records. That rationale is clear enough that it has the power to convince[.]") (simplified).

Specifically, the ALJ explained that despite conflicting evidence, including medical opinions that she found generally or partially persuasive, her RFC determination included "some addition[al]" restrictions that "account[ed]" for Plaintiff's reports of "varying levels of depression, anxiety, and [physical] discomfort." (Tr. 31.) For example, the ALJ explained that her RFC accounted for Plaintiff's "most regularly reported difficulties" of impaired "attention and stress management" by limiting him to "simple instructions and tasks and low stress work (defined as requiring only occasional changes in work setting and duties, no work on a moving conveyor belt and no work requiring hourly quotas)." (*Id.*) Further, the ALJ, seeking to "avoid additional stress on the affected joints that could aggravate discomfort" or "aggravation of the left shoulder impairment," formulated an RFC that precluded crawling, balancing, and climbing of ladders, ropes, or scaffolds and more than "occasional overhead reaching" with the left arm. (*Id.* at 29.)

PAGE 8 – OPINION AND ORDER

The Court's analysis below demonstrates that the ALJ satisfied the clear and convincing reasons standard. Like other courts, however, the Court finds it notable that the ALJ did not fully discount Plaintiff's testimony. *See Burns v. Bisignano*, No. 24-4199, 2025 WL 1937448, at *2 (9th Cir. July 15, 2025) ("Notably, the ALJ did not fully discount [the claimant's] testimony and accounted for her physical and mental limitations in the RFC determination.") (simplified); *Austin v. Dudek*, No. 23-3602, 2025 WL 957499, at *1-2 (9th Cir. Mar. 31, 2025) ("In addition, the ALJ considered [the claimant's] alleged impairments, incorporating several 'precautionary' measures in the [RFC] determination . . . , even where there was limited or conflicting evidence.").

### 2.    Reported Activities

To the extent the ALJ declined fully to credit Plaintiff's symptom testimony, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for doing so.

It is well established that an ALJ may discount a claimant's symptom testimony based in part on an inconsistency between his claimed limitations and reported activities. In *Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014), the Ninth Circuit confirmed as much, noting that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination." *Id.* (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)); *see also Garrison*, 759 F.3d at 1016 (stating that if a claimant's "level of activity" is "inconsistent with [his] claimed limitations," an ALJ may discount the claimant's testimony based on his reported "activities") (simplified); *Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." (first citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th

Cir. 2007); and then citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004))).

The ALJ here discounted Plaintiff's testimony on the ground that he reported engaging in activities (e.g., "working, cutting wood, and 'laborious outdoor activity'") that were indicative of the "ability to stand and walk much more than his stated limits in function reports and hearing testimony" (i.e., his reported inability to stand for more than "five minutes at time" or lift more than ten pounds). (Tr. 26, citing Ex. 12D, Ex. 4F at 19, 21, 27, Ex. 5F at 7-8, Ex. 7F at 10-1, i.e., Tr. 279-85, 699, 701, 707, 777-78, 849-54.) The ALJ also explained that she found Plaintiff's reports about "working on art projects and playing guitar undermine[d] his complaints regarding upper extremity limitations and focus." (*Id.*, citing Ex. 4F at 6-8, 18-19, 31, 38, 41, Ex. 14F at 21, i.e., Tr. 686-88, 698-99, 711, 717, 721, 968.) Further, the ALJ explained that Plaintiff "minimized" his performance of "household chores" at the administrative hearing, yet he "reported to multiple sources" that he was "independent in a variety of tasks including cooking and cleaning." (*Id.*, citing Ex. 4F at 7-8, Ex. 8F at 4, Ex. 9F at 8-9, Ex. 18F at 4, i.e., Tr. 687-88, 921, 936-37, 1003.)

Plaintiff acknowledges that the ALJ discounted his testimony based in part on his self-reported activities. (Pl.'s Opening Br. at 7, 10, citing Tr. 25-31.) Plaintiff, however, argues that the ALJ's reasons were neither clear and convincing nor supported by substantial evidence. (*Id.* at 7.)

With respect to his reported activities, Plaintiff argues that although he reported engaging in the activities upon which the ALJ relied, his "description of those activities was not inconsistent with his allegations" and does not necessarily translate to an ability to perform full-time work compatible with the ALJ's RFC determination. (*Id.* at 10, citing Tr. 25.) In support,

PAGE 10 – OPINION AND ORDER

Plaintiff emphasizes that he "cannot carry [wood] anymore," he only reported "cutting wood on two occasions" to heat his home, and the record lacks "any information about what kind of 'laborious' activity" he performed and "used as a coping mechanism for dealing with stress." (*Id.* at 11, citing Tr. 376, 707; *see also* Tr. 367, March 26, 2024, Plaintiff reported that he is "unable to do regular housework like vacuuming," it takes him "almost [two] hours to complete" vacuuming and dishes "because of [his] pain [and] weakness," and he "used to be able to bring in wood to heat [his] house" but can no longer "carry[] the wood" because it "causes [him] to experience excruciating intense pain"; *id.* at 707, October 22, 2021, nearly a year after his alleged onset of disability, Plaintiff appeared by phone for counseling and "shared that he was able to navigate a frustrating financial situation th[at] past week, first by outlining previously identified coping skills, connecting with family supports, and also through laborious outdoor activity").

Plaintiff "offers a different interpretation" of the record that "tend[s] to corroborate [his]testimony[, b]ut simply offering an alternative interpretation of the record does not demonstrate the ALJ committed reversible error." *Jarrett v. O'Malley*, No. 23-3565, 2024 WL 4707890, at *1 (9th Cir. Nov. 7, 2024) (first citing *Smartt*, 53 F.4th at 494; and then citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008)). After all, "[w]here the [record] evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Smartt*, 53 F.4th at 494 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)); *see also Hougas Bisignano*, No. 24-5650, 2025 WL 2964997, at *2 (9th Cir. Oct. 21, 2025) (affirming the ALJ's decision because the claimant "offer[ed] an interpretation of the record evidence that support[ed] his subjective complaints—but [did] not undermine the ALJ's

PAGE 11 – OPINION AND ORDER

rational alternative interpretation of the record" (citing *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020))).

The Ninth Circuit's decision in *Berry v. Astrue*, 622 F.3d 1228, 1234-35 (9th Cir. 2010), is illustrative of this principle. In that case, the Ninth Circuit reviewed an ALJ's discounting of a claimant's testimony based on "contradictions between complaints in [his] . . . activity questionnaire and hearing testimony and some of his other self-reported activities." *Id.* at 1234. The Ninth Circuit noted that "[o]n the one hand, some of [the claimant's] statements supported his hearing testimony" and portions of his activity questionnaire, but "[o]n the other hand, some of [his] other self-reported activities and self-evaluations suggested a higher degree of functionality." *Id.* at 1234-35. Although the record was susceptible to more than one rational interpretation, the Ninth Circuit upheld the ALJ's decision because it "agree[d]" that the record "support[ed] . . . and justif[ied the ALJ's] decision to discount some of [the claimant's] subjective complaints." *Id.* at 1235 (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009)).

Similarly here, Plaintiff advances an alternative interpretation of the record that is rational, but substantial evidence nevertheless supports the ALJ's partial discounting of his testimony because he reported engaging in activities incompatible with his allegations of debilitating pain. *See Chen*, 2026 WL 1427028, at *1-2 (holding that the ALJ satisfied the clear and convincing reasons standard, as "'more than a mere scintilla' of evidence . . . support[ed the ALJ's] decision to discount [the claimant's] subjective symptom testimony" (quoting *Biestek*, 587 U.S. at 103)).

Consider some of the reports that Plaintiff's treating provider documented in his medical records. For example, in treatment notes dated September 25, 2020 and April 2, 2021, less than

PAGE 12 – OPINION AND ORDER

two months before and nearly six months after the alleged onset date of November 13, 2020, Plaintiff presented for a medical visit regarding his recent worsening of lower back pain and the certified physician's assistant, Christopher Wright, listed Plaintiff's "[l]eisure activities" as including "[w]ood carving," as opposed to simply chopping wood to heat his home. (*See* Tr. 419, 430, describing Plaintiff's leisure activities as including "[w]ood carving, hunting, fishing, [and] drawing"; *id.* at 308, 311, August 16, 2021, demonstrating that Plaintiff completed an adult function report, in which he described "wood carving" as a hobby and interest that he performed "pretty well"). Similarly, on February 23, 2022, Plaintiff's qualified mental health practitioner, Chloe Alsterlind ("Alsterlind"), documented a report suggesting that Plaintiff's wood chopping was not so limited. (*See id.* at 699, noting that Plaintiff "report[ed] that he has been focusing on his art and spending more time outside (chopping wood, relaxing on his porch in the woods)"; *see also id.* at 778-79, October 29, 2021, addressing Plaintiff's chief complaint of right middle finger swelling and redness and a cut that Plaintiff noticed after "he was cutting wood").

Now consider some of Plaintiff's testimony and reports about the alleged severity of his symptoms. Plaintiff completed adult function reports on August 19, 2021, February 8, 2023, and January 8, 2024, in which he reported that (1) he used to "work full time, explore the woods, split wood, [perform] chores, hunt[, and] fish" but he was no longer able to do so because of his "illnesses, injuries, or conditions," (2) he is in "excruciating pain every day with no relief" and his pain "never goes below a [nine] on a scale of [one to ten]," and (3) he can "only lift [five] to [ten] pounds" and "not repetitively." (*Id.* at 321, 327, 362, 366-67.) Further, at the October 4, 2024 hearing, Plaintiff testified that he must "find a place to sit down" or leave a store after "five minutes of standing" because his "legs start getting weak" and "feel[] like they [cannot] support [him]," and "it causes excruciating pain." (Tr. 52-53; *cf. id.* at 707, Plaintiff was "able to navigate

PAGE 13 – OPINION AND ORDER

a frustrating financial situation" by engaging in "laborious outdoor activity"; *see also id.* at 349, 352, February 8, 2023, Plaintiff reported that he is "unable to fish very much and hunt[ing] is[] to[o] difficult" and it "can be difficult to do art" because "it is difficult to write"; *id.* at 340, 343, February 7, 2023, Plaintiff reported that he "do[es] not hunt or fish anymore" because it is "too hard" and "[t]oo painful" for him to "get out and do it"; *id.* at 445-50, June 23, 2021, Plaintiff reported that he "use[d] chewing tobacco because '[he] like[d] sitting down and having a dip after supper, while fishing or hunting, or when out with friends'"; *id.* at 1012-13, June 25, 2021, Plaintiff presented for a consultation about his desire to obtain a second opinion and the orthopedic surgeon, Chae Greg Ha, M.D. ("Dr. Ha"), described him as a "rather poor historian").[2]

On this record, the Court finds that Plaintiff fails to demonstrate that the ALJ committed reversible error in partially discounting his testimony because his self-reported activities suggested that his symptoms were not as debilitating as he alleged. (*See* Pl.'s Opening Br. at 4-12; Pl.'s Reply Br. at 1-4.) Where, as here, the record is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *See Ford*, 950 F.3d at 1154 ("If the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (simplified); *cf. Jarrett*, 2024 WL 4707890, at *1 ("[S]imply offering an alternative interpretation of the record does not demonstrate the ALJ committed reversible error.") (citations omitted); *Smartt*, 53 F.4th at 499-500 ("The ALJ made a reasonable determination based on specific, clear, and convincing evidence that [the claimant's] activities

---

[2] A court is "not permitted to affirm the Commissioner on a ground upon which the Commissioner did not rely, but [it] . . . is permitted to consider additional support for a ground on which the ALJ relied." *Fenton v. Colvin*, No. 6:14-cv-00350-SI, 2015 WL 3464072, at *1 (D. Or. June 1, 2015) (citing *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006)). Thus, the Court may cite other record evidence that supports the ALJ's findings.

were inconsistent with the alleged severity of her limitations. . . . Here, the ALJ's determination that [the claimant's] self-reported activities were inconsistent with the constant '[ten out of ten]' pain she described was not unreasonable").

### 3.    Treatment History

The ALJ also discounted Plaintiff's testimony based in part on significant gaps in his treatment history. (*See id.* at 26, indicating that the ALJ discounted Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms" and in doing so began with the "objective evidence, including examinations and diagnostic studies" before turning to Plaintiff's self-reported activities and failure to engage in treatment for his back or mental health for "several years").

Clear and convincing reasons for discounting a claimant's testimony include "significant gaps in treatment." *Wood v. Busignano*, No. 24-6838, 2025 WL 3527450, at *2 (9th Cir. Dec. 9, 2025). For example, in *Wood*, the Ninth Circuit explained that because "the ALJ did not find evidence of malingering and determined that objective medical evidence established an impairment that could produce the symptoms of which the claimant complained, the ALJ [needed to] offer clear and convincing reasons for rejecting the claimant's testimony." *Id.* (citing *Smartt*, 53 F.4th at 497). The Ninth Circuit held that the ALJ did just that and thus "did not improperly discount [the claimant's] testimony." *Id.* In support of this holding, the Ninth Circuit explained that the ALJ "identified inconsistencies between [the claimant's] testimony and the medical evidence in the record" and "observed that there were significant gaps in treatment and an improvement in [the claimant's] mental health" and that "[t]hese reasons [were] sufficiently clear and convincing." *Id.* (citing *Smartt*, 53 F.4th at 497-501); *see also Thomas v. Saul*, 830 F. App'x 196, 198 (9th Cir. 2020) ("The ALJ also pointed to [the claimant's] improvement during treatment and lengthy gaps in treatment that suggest that his mental impairments were not as

PAGE 15 – OPINION AND ORDER

limiting as he testified. Accordingly, the ALJ's decision to discount [the claimant's] testimony was not unreasonable.").

In his opening brief, Plaintiff failed timely to raise any challenge to the ALJ's reliance on gaps in his treatment history. (*See* Pl.'s Opening Br. at 4-12.) The Commissioner, however, argued that the ALJ discounted Plaintiff's testimony based on such gaps. (*See* Def.'s Br. at 6-7, arguing that the ALJ appropriately found that Plaintiff's allegation of "debilitating pain was inconsistent with his treatment history" and focusing on Plaintiff's failure to "seek any treatment for his allegedly most limiting impairment involving the back for several years" (citing Tr. 26-27)). The Commissioner also argued that Plaintiff forfeited any argument to the contrary. (*Id.* at 7, citing *Nadon v. Bisignano*, 145 F.4th 1133, 1138 (9th Cir. 2025)); *see also Nadon*, 145 F.4th at 1138 (noting that the "ALJ provided other reasons for discounting the various healthcare professionals' opinions" and holding that "[b]ecause [the claimant] failed to . . . challenge the ALJ's reliance on them, the Commissioner was correct to assert that [the claimant] forfeited the argument").

Responding to the Commissioner's arguments, Plaintiff asserts that the Commissioner impermissibly attempts to offer post hoc rationalizations for the ALJ's decision and that the ALJ "made no such finding" regarding any gaps in his back treatment history. (Pl.'s Reply Br. at 3.) Plaintiff also argues that the "portion of the decision cited by the Commissioner states only that [he] 'did not seek treatment specific to the knees during the period at issue.'" (*Id.*, quoting Tr. 27.)

The Court finds Plaintiff's arguments unpersuasive. "Long-standing principles of administrative law require [a federal court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what

PAGE 16 – OPINION AND ORDER

the adjudicator may have been thinking." *Bray*, 554 F.3d at 1225-26 (simplified). As reflected above, however, the Commissioner's argument is based on findings that the ALJ made. On page twenty-six of her decision, the ALJ cited significant gaps in Plaintiff's back and mental health treatment history. (Tr. 26.) The Commissioner appropriately relied on a treatment gap of "several years." (Def.'s Br. at 7, citing Tr. 26-27, the latter of which also expands on Plaintiff's back care).

In seeking to avoid the Commissioner's forfeiture argument, Plaintiff invokes *Bray* and principles of administrative law that do not apply under the circumstances presented here. At the same time, Plaintiff does not challenge or address the ALJ's reliance on significant gaps in his mental health treatment. (*Compare* Pl.'s Reply Br. at 1-4, *and* Tr. 26); *see also Anderson v. Colvin*, 223 F. Supp. 3d 1108, 1131 (D. Or. 2016) ("[The p]laintiff raises for the first time in her reply brief that contrary to the regulations, the ALJ failed to [consider] her age and time out of the workforce when determining her RFC. This argument was not, however, properly presented because all issues must be raised in the initial brief. Accordingly, it will not be considered.") (simplified); *Johnson v. Colvin*, No. 13-cv-01139-HZ, 2014 WL 3851140, at *5 n.2 (D. Or. Aug. 1, 2014) ("Because [the p]laintiff failed to raise the error in his opening brief, the error is waived.").

Plaintiff's failure to do so is noteworthy, including because the ALJ later made other related findings. (*See* Tr. 28, "Based on this improvement, [Plaintiff] and [his] therapist agreed to close the session of care. . . . [The therapist] provided [Plaintiff with] recommendations for community-based therapists and offered [him] 'continuing care with th[e] writer to support successful transfer' elsewhere if needed. . . . [Plaintiff] did not establish with another therapist and did not seek additional help with a transfer. At follow up with a provider several months later, [Plaintiff] did not raise concerns about mental health and the Patient Health Questionnaire

PAGE 17 – OPINION AND ORDER

(PHQ) screening for depression was negative[.]" (citing Ex. 14F at 12-13, 18-21, i.e., Tr. 959-60, 965-68)).[3]

Given Plaintiff's failure timely and completely to challenge the ALJ's reliance on his significant treatment gaps or adequately respond to the Commissioner's arguments, the Court finds that the ALJ appropriately discounted Plaintiff's testimony based in part on his treatment history. *See Cody v. Bisignano*, No. 25-3837, 2026 WL 1470573, at *2 (9th Cir. May 26, 2026) (holding that the ALJ appropriately "discounted [the claimant's symptom] testimony in part because the record indicated that [the claimant] sought minimal treatment" for mental health limitations).

### 4.    Plaintiff's Use of an Assistive Device

In evaluating Plaintiff's symptom testimony, the ALJ also found that record evidence did "not support" Plaintiff's need to use an "assistance device[,] as [he] reported elsewhere." (Tr. 27, citing Ex. 4E at 7, Ex. 11E, Ex. 18F, and Plaintiff's "[h]earing testimony," i.e., Tr. 41-64, 304-18, 362-69, 1000-10; *see also* Tr. 920-21, 923, 1002-03, 1005, noting that Plaintiff attended consultative physical exams using a "single point wooden cane," reported that "he continue[d] to use [it] . . . daily to help him with balance and coordination because occasionally his legs will just 'give out from under him,'" estimated that he "fall[s] about [one to two times] per week," and utilized the cane during the nurse practitioner's testing; *id.* at 49-50, reflecting that during the

---

[3] On February 24, 2024, during Dr. Luther-Starbird's consultative exam, Plaintiff reported that his mental health treatment was "[h]elpful, but [it] was terminated by the counselor for reasons unknown to him [and] he wanted to continue." (Tr. 992; *cf.* Tr. 967-69, May 25, June 1, and June 14, 2022, noting that Plaintiff "agree[d] that he would like . . . to work toward closing [his] episode of care before the end of June," "continue[d] to make progress toward his treatment goal and support[ed] moving toward closing [his] episode of care for continuing care by the end of the month," "successfully met [his] treatment" objective of sustaining his depression at a level of five out of ten or less "for at least one month," and scheduled a "closing session" on June 22, 2022).

PAGE 18 – OPINION AND ORDER

hearing, Plaintiff confirmed that none of his medical providers "prescribe[d] th[e] cane" that he used).

The ALJ appropriately found that Plaintiff's cane usage undermined his symptom testimony. *See Bostwick v. Berryhill*, 677 F. App'x 344, 345 (9th Cir. 2017) (holding that the ALJ did not err in determining that the claimant's symptom "testimony was inconsistent with the lack of evidence that she needed a hand-held assistive device to walk") (citation omitted); *see also Smartt*, 53 F.4th at 497 (holding that the claimant's "inconsistent use of mobility aids belie[d] her testimony about the severity of her limitations" and explaining that "[t]he ALJ identified multiple specific examples of [the claimant's] inconsistent use of mobility aids contrary to her testimony about the extent of her limitations."). Plaintiff does not present any argument to the contrary. (*See* Pl.'s Opening Br. at 4-12; Pl.'s Reply Br. at 1-4; *cf.* Def.'s Br. at 7, relying on this portion of the ALJ's decision).

### 5. Conflicting Medical Evidence

Plaintiff argues that the ALJ erred in discounting his testimony based on conflicting medical evidence. (*See* Pl.'s Opening Br. at 4-12; Pl.'s Reply Br. at 1-4; *cf.* Def.'s Br. at 8-10; Tr. 26-28.)

Contradictory medical evidence is a clear and convincing reason for declining fully to credit a claimant's symptom testimony. *See Smartt*, 53 F.4th at 496-97, 499 (holding that the "ALJ properly discounted [the claimant's] subjective [symptom] testimony and self-reported limitations[, in part] because . . . the objective medical evidence was inconsistent with those limitations" and explaining that "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony" (quoting *Carmickle*, 533 F.3d at 1161)). In this case, the Court finds it unnecessary to resolve the parties' dispute regarding the ALJ's reliance on conflicting medical evidence because Plaintiff's self-reported activities, treatment gaps, and cane

PAGE 19 – OPINION AND ORDER

usage are sufficiently clear and convincing reasons supporting the ALJ's partial discounting of his testimony.

### 6.    Conclusion

In sum, the ALJ did not commit reversible error in discounting Plaintiff's testimony.[4] *See Brokaw v. Bisignano*, No. 24-6710, 2025 WL 3158801, at *2 (9th Cir. Nov. 12, 2025) ("Because the ALJ's rationale is clear enough that it has the power to convince, the ALJ's citation of [conflicting] medical records and . . . activities provided sufficiently specific, clear, and convincing reasons for discounting her subjective testimony . . . [about her] impairments.") (simplified).

## II.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law

"In January 2017, the Social Security Administration issued revised regulations for evaluating medical opinions relating to claims filed on or after March 27, 2017."[5] *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416)). The revised "regulations provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical opinion." *Id.* (quoting 20 C.F.R. § 416.920c(a)).

---

[4] The Court summarily rejects Plaintiff's derivative argument that the ALJ failed adequately to consider the effects of his obesity in formulating the RFC. (*See* Pl.'s Opening Br. at 13-15; Pl.'s Reply at 4-5.) The ALJ addressed the "compounding effects" of his "obesity" and the "stress on [his] affected joints" by formulating an RFC that included "greater restrictions on postural activities" and environmental limitations than certain medical providers supported. (*See* Tr. 26, 28, 31, adding that the ALJ "fully considered the effects of obesity" in formulating the RFC).

[5] Given that Plaintiff filed his applications for benefits on June 10, 2021 (Tr. 19), the parties agree the revised regulations apply here. (*See* Pl.'s Opening Br. at 16-19 & Def.'s Br. at 12-16.)

PAGE 20 – OPINION AND ORDER

Instead, "ALJ[s] must assess the persuasiveness of each medical opinion after considering specified factors." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (first citing *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022); and then citing 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(b)).

Specifically, the revised "regulations require an ALJ to discuss the supportability and consistency of medical evidence—the factors the agency has historically found to be the most important in evaluating medical opinions—while allowing for discussion of other factors listed in paragraphs (c)(3) through (c)(5), as appropriate." *Cross*, 89 F.4th at 1215 (citing 20 C.F.R. § 416.920c(a)); *see also Woods*, 32 F.4th at 791 ("'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" (quoting 20 C.F.R. § 404.1520c(a))). "Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence[.]" (quoting *Woods*, 32 F.4th at 791-92)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources[.]" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792).

In addition to supportability and consistency, "[a]n ALJ may discuss other factors [listed in paragraphs (c)(3) through (c)(5)], such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (citing 20 C.F.R. § 416.920c(b)(2)). If, however, an ALJ concludes that "two or more contradictory medical opinions 'both equally well-supported . . . and consistent with the record[,]' . . . the regulations

mandate discussion of these other factors." *Id.* at 1214-15 (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)-(5)).

Where, as here, the new regulations apply, a district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("For claims subject to the new regulations, . . . an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)); *see also Stiffler*, 102 F.4th at 1108 ("In sum, the ALJ's evaluation of [the physician's] medical opinion is supported by substantial evidence.").

### B.     Analysis

Plaintiff argues that substantial evidence does not support the ALJ's evaluation of the opinion of the consultative examiner, Dr. Luther-Starbird. (Pl.'s Opening Br. at 2, 15-19.) The Court disagrees.

### 1.     Dr. Luther-Starbird's Opinion

On February 24, 2024, Oregon's Disability Determination Services ("DDS") referred Plaintiff to Dr. Luther-Starbird for a consultative psychological assessment. (Tr. 991-97.) Dr. Luther-Starbird's assessment consisted of a mental status exam, clinical interview and observations, and review of records that she received from DDS—namely, a consultative psychological evaluation that Ezekiel Sanders, Psy.D. ("Dr. Sanders") conducted on April 22, 2023. (*See id.* at 991, citing Plaintiff's Olympus Health evaluation dated April 22, 2023; *id.* at

PAGE 22 – OPINION AND ORDER

931-41, reflecting that Dr. Sanders, a provider with Olympus Health, issued his opinion on this date).

During the clinical interview, Plaintiff reported that he is unable to "bend or reach" because of his chronic pain, he has "crushed discs in his back just above [the] pelvis" and fears "falling and does not want to go out," his depression and anxiety respectively began in 2012 and after injuring his back, his "mental health issues make it very difficult to deal with people," and his "depression can rise up" to a ten on a ten-point scale and cause him to "consider[] suicide, but [he] has reached out to others instead." (*Id.* at 992.) Plaintiff added that he uses marijuana, his therapy was "[h]elpful" but the counselor "terminated [it] . . . for reasons unknown to him as he wanted to continue," he "tries to take care of the house, do chores, and cook for his nephews when his sister is at work," he "sometimes works on art projects to keep busy," he "wakes up [early] and performs all activities of daily living with assistance, when his nephews are available to help," he drives and "does not need help making purchases," he has "positive" relationships and "interacts with his sister and nephews," and he "does not interact with friends [or have a] social group." (*Id.* at 992-93.)

Dr. Luther-Starbird's diagnoses were mild to moderate major depressive disorder, generalized anxiety disorder, social anxiety disorder, chronic pain, and "per [Plaintiff's] reports," a herniated disc, arthritis, bursitis, bone spurs, and plantar fasciitis. (*Id.* at 995.) In terms of work-related functional limitations, Dr. Luther-Starbird opined that Plaintiff suffers from (1) mild to moderate limitations in understanding, remembering, or applying information, which may result in his "efficiency . . . wax[ing] and wan[ing] depending on his level of pain and depression," (2) marked limitations in his ability to interact with others, in large part because of his social anxiety, depression, isolation, failure to reach out to or form relationships with others, and

PAGE 23 – OPINION AND ORDER

chronic pain, (3) moderate to marked limitations in concentration, persistence, or pace, which may result in his "abilities . . . wax[ing] and wan[ing] depending on [his] level of pain, anxiety and depression," and (4) marked to extreme limitations in his ability to adapt or manage oneself because he is "not currently able to manage himself in a work setting and will be unlikely to do so unless there is some improvement in his chronic pain level, anxiety[,] and depression."[6] (*Id.* at 996.)

### 2.    Disposition

The Court concludes that contrary to Plaintiff's argument, substantial evidence supports the ALJ's evaluation and discounting of Dr. Luther-Starbird's opinion. *See Ahearn*, 988 F.3d at 1115 ("[T]he threshold for [substantial] evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (quoting *Biestek*, 587 U.S. at 103)).

Under the revised regulations, an "ALJ 'must articulate how persuasive [he] finds all of the medical opinions from each doctor or other source, and explain how [he] considered the supportability and consistency factors in reaching these findings.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792). Consistency concerns the extent to which a "medical opinion is consistent with the evidence from other medical and nonmedical sources," *Kitchen*, 82 F.4th at 740 (quoting *Woods*, 32 F.4th at 792), and "[s]upportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *cf. Kitchen*, 82 F.4th at 740 ("Supportability

---

[6] Dr. Luther-Starbird's medical form defines mild, moderate, marked, and extreme limitations as "slightly limited," "fair[ly]" limited, "seriously limited," and precluding "function[ing] in th[e relevant] area independently, appropriately, effectively, and on a sustained basis." (Tr. 996.)

PAGE 24 – OPINION AND ORDER

concerns how 'a medical source supports a medical opinion' with relevant evidence.") (simplified).

In this case, the ALJ "addressed consistency . . . by reviewing the opinions of the other medical professionals—none of whom reached the same conclusion" or identified the same degree of limitation as Dr. Luther-Starbird. *See Morrow*, 2025 WL 1924900, at *1 (upholding a similar finding); (*cf.* Tr. 31, finding that Dr. Luther-Starbird's opinion regarding the "degree of limitation" attributable to Plaintiff's mental impairments was "inconsistent with the state agency findings," which the ALJ detailed beforehand; *see also id.* at 30, describing the state agency psychological consultants' findings and stating that the state agency consultant's opinion on reconsideration was "generally persuasive" (citing Exs. 1A, 2A, 6A, 7A, i.e., Tr. 65-108, 112-33)).

Plaintiff fails adequately to address the ALJ's reliance on the reviewing state agency psychological consultant. Plaintiff acknowledges that the ALJ found Dr. Luther-Starbird's opinions "inconsistent with the overall record." (Pl.'s Opening Br. at 18.) To the extent the ALJ evaluated the consistency between Dr. Luther-Starbird's findings and other medical opinions, Plaintiff argues only that Dr. Luther-Starbird's opinion is consistent with Dr. Sanders' opinion. (*Id.* at 18-19.)

Plaintiff fails to demonstrate that the ALJ committed reversible error. The ALJ found that some of Dr. Sanders' findings were "persuasive" but otherwise deferred to and resolved any conflicts in favor of the state agency psychological consultant's *more* restrictive finding on reconsideration.[7] (*See id.* at 30, reflecting that the ALJ explained that Dr. Sanders' opinions were

---

[7] The ALJ found "persuasive" Dr. Sanders' diagnosis of mild and recurrent major depressive disorder and identification of no "specific work-related limitations" but only "to the

PAGE 25 – OPINION AND ORDER

"inconsistent with the state agency findings and the medical evidence as a whole that does support some symptomatology limiting [Plaintiff's] ability to consistent perform more complex tasks").

Also noteworthy is that in addition to assigning Plaintiff a score of twenty-six out of thirty on a Mini Mental Status Exam ("MMSE"), Dr. Sanders opined that Plaintiff's "depression and inattention . . . contribut[e] to his overall challenges" but "do not limit him from being able to work." (Tr. 940); *see generally Battle v. Astrue*, 243 F. App'x 514, 517 (11th Cir. 2007) (noting that a claimant "scored [twenty-six] out of [thirty on the MMSE], placing him in the mildly impaired range"); *see also Decker v. Colvin*, No. 6:11-cv-06344-HU, 2013 WL 3791444, at *15 (D. Or. July 19, 2013) (making a similar observation about an MMSE score and citing *Battle* in support).

Plaintiff fails to demonstrate that the ALJ erred in resolving conflicts in the medical opinion evidence because he does not address these findings, which do not support Dr. Luther-Starbird's opinions or the alleged severity of his symptoms. *See Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017) ("The ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it") (citation omitted); *see also Slayton v. O'Malley*, No. 22-16883, 2024 WL 637482, at *1 (9th Cir. Feb. 15, 2024) ("The ALJ 'is charged with determining credibility and resolving . . . conflict[s]' between medical evidence." (quoting *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012))).

Plaintiff merely argues that the ALJ "did not rely" on Dr. Sanders' opinion in rejecting Dr. Luther-Starbird's opinion, that the Commissioner's suggestion to the contrary amounts to a

---

extent" it supported that Plaintiff's "mental health impairments/limitations" were not disabling. (Tr. 30.)

PAGE 26 – OPINION AND ORDER

pos hoc rationalization, and that Dr. Sanders' "opinion does not meaningfully undermine Dr. Luther-Starbird's assessment." (Pl.'s Reply Br. at 6, citing Tr. 30-31.) As the Court explained above, the ALJ resolved conflicts in the medical opinion evidence in favor of the state agency psychological consultant's findings on reconsideration and thus separately rejected both Dr. Luther-Starbird's more restrictive and Dr. Sanders' less restrictive opinions. (*See* Tr. 30-31, finding "generally persuasive" the state agency psychological consultant's opinion that Plaintiff was "capable of carrying out and maintaining attention/concentration for short and simple instructions but not detailed or complex ones" (citing Exs. 6A & 7A, which includes these findings at Tr. 115-16, 119-20, 126-27, 130-31)). Plaintiff does not address how the ALJ resolved these conflicts, nor does he explain how Dr. Sanders' opinion that he is "able to work" despite the limitations that Dr. Sanders identified supports Dr. Luther-Starbird's opinion or finding harmful error. *Cf. Ahearn v. Colvin*, No. 23-35572, 2024 WL 5040995, at \*2 (9th Cir. Dec. 9, 2024) ("The ALJ also did not err by relying on findings from non-examining state agency psychologists.") (citations omitted).

The ALJ also found Dr. Luther-Starbird's opinion unpersuasive because she offered little to no "support for any of the limitations" that she identified, and because her opinion was incompatible with records capturing periods and instances in which Plaintiff was not engaged in "treatment for mental health" and "deni[ed]" or did not "endorse[]" such symptoms. (Tr. 31; *cf. id.* at 991, noting that Dr. Luther-Starbird's record review was limited to Dr. Sanders' eleven-page report). The ALJ in turn found that Dr. Luther-Starbird "appear[ed]" to "rel[y] primarily on subjective complaints" (*id.*), which, as discussed above, the ALJ declined fully to credit.

"[A]n ALJ may give less weight to a mental health opinion when it relies 'more heavily' on self-reports than on clinical observations, particularly when the ALJ properly discounts the

claimant's testimony as not credible." *Thayer v. Berryhill*, 749 F. App'x 559, 559-60 (9th Cir. 2019) (citing *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017)); *see also Tabayoyon v. Kijakazi*, No. 21-35802, 2022 WL 16570801, at *2 (9th Cir. Nov. 1, 2022) ("Because . . . the ALJ properly discounted [the claimant's] symptom testimony, this is a valid reason for also discounting the medical sources that relied on [the claimant's] testimony." (citing *Buck*, 869 F.3d at 1049)). Plaintiff argues that it was "factually incorrect" for the ALJ to "characteriz[e]" Dr. Luther-Starbird's opinion as relying "solely" on his self-reports. (Pl.'s Reply Br. at 6.) He also suggests that Dr. Luther-Starbird's consultative psychological exam was more persuasive than the one from Dr. Sanders, who "relied heavily on Plaintiff's self-report[s] and did not address the degree of functional limitation in the same manner as Dr. Luther-Starbird." (*Id.* at 7, citing Tr. 931-41.)

The Court concludes that the ALJ adequately considered the supportability factor. Notably, Drs. Luther-Starbird's and Sanders' consultative psychological exams were based on a clinical interview, a single previous assessment that they received from DDS, and mental status exams consisting of common components. (*Compare* Tr. 931-43, *and id.* at 991-97.) Even if Dr. Sanders failed to express his findings in comparable ways, this does not detract from the ALJ's finding that Dr. Luther-Starbird appeared to rely "primarily" (not "solely") on Plaintiff's self-reports. (*See* Pl.'s Reply Br. at 7, making this same claim about Dr. Sanders's nearly identical consultative exam). Thus, substantial evidence supports the ALJ's evaluation of Dr. Luther-Starbird's opinion.

///

///

///

PAGE 28 – OPINION AND ORDER

## CONCLUSION

For the reasons stated, Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

**IT IS SO ORDERED.**

DATED this 20th day of July, 2026.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 29 – OPINION AND ORDER